IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNIE COX,<br><br>    Plaintiff,<br><br>  v.<br><br>ELECTRONIC DATA SYSTEMS<br>CORPORATION, and DOES 1<br>through 10, inclusive,<br><br>    Defendants. | No. C 08-03927 WHA<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this wrongful termination action, defendant Electronic Data Systems Corporation moves for summary judgment against plaintiff Donnie Cox. For the reasons stated below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

The following facts are undisputed. Plaintiff was employed by EDS from approximately October 11, 1999, until he was terminated on July 11, 2006. At all times during his employment with EDS, he worked at the California State Automobile Association (a client of EDS) office in San Francisco. His first job title was Information Specialist on the Claims Team. In 2004, plaintiff was promoted to Technical Delivery Team Manager.

In May 2006, plaintiff received a jury summons from the Superior Court of California for the City and County of San Francisco notifying him to be prepared to appear for jury duty on the

week of June 19, 2006. Plaintiff provided notice both prior to and in between the days of his jury service to various EDS managers and employees. Plaintiff attended jury duty on Tuesday, June 20, and Wednesday, June 21, 2006. He was then absent from two 9:00 a.m. invoice meetings on Thursday, June 22 (because he was in another employee's office discussing a project), and Friday, June 23 (because he accidentally overslept). These absences were unexcused and documented as such.

On July 6, 2006, while still employed with EDS, plaintiff applied for a job with EDS' client, CSAA.

Plaintiff was terminated by EDS on July 11, 2006. The terminating supervisor cited job performance concerns and problems that occurred during the week of June 21 as reasons for plaintiff's termination. Following the termination, plaintiff requested, but was not allowed, to gather certain personal items from his office. Instead, he was told that the requested items would be shipped to him. Plaintiff has yet to receive these personal items valued at $200. Finally, in September 2006, plaintiff received a letter from CSAA stating that he would not be hired.

In January 2007, plaintiff filed a complaint with the Department of Labor Standards Enforcement regarding the circumstances surrounding his termination from EDS (Cox. Dep. Exh. 48).

After exhausting his administrative remedies, plaintiff filed suit against defendant EDS in San Francisco Superior Court on July 11, 2008 (*see* Dkt. No. 1). On August 18, 2008, defendant removed the case to federal court on the basis of diversity jurisdiction (*ibid.*). The first amended complaint was filed on August 28, 2008 (Dkt. No. 6). It sought compensatory and punitive damages based on the following claims for relief against defendant EDS:

1. Wrongful discharge in violation of public policy under California Labor Code Section 230(a);

2. Discharge for performing jury duty as required by law under California Labor Code Section 230(a);

3. Late payment of wages under California Labor Code Section 201;

4. Conversion of personal property;

2

5. Intentional interference with prospective economic advantage;

6. Prevention of subsequent employment by misrepresentation under California Labor Code Section 1050; and

7. Unfair business practices under California Business and Professions Code Section 17200.

On April 1, 2009, plaintiff's third claim for relief for late payment of wages under California Labor Code Section 201 was dismissed by stipulation and order following a partial settlement (Dkt. No. 38).

Defendant now moves for summary judgment as to all remaining claims. Plaintiff opposes the motion only as to claim 1 (wrongful discharge in violation of public policy under California Labor Code Section 230(a)), claim 2 (discharge for performing jury duty as required by law under California Labor Code Section 230(a)), claim 4 (conversion of personal property), and claim 7 (unfair business practices under Business and Professions Code Section 17200). Plaintiff does not oppose the motion regarding claims 5 or 6 (*see* Opp. 1).

**ANALYSIS**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A genuine issue of "material" fact is one that could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

To achieve a grant of summary judgment, the moving party must first "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does *not* meet its initial burden, the motion must be denied. If the moving party *does* meet its initial burden, the non-moving party must then point to specific facts beyond the pleadings showing that there is a genuine issue for trial. *Id.* at 325. Neither conclusory allegations nor unsubstantiated assertions will satisfy this burden. *See Lujan v. National Wildlife*

3

*Federation*, 497 U.S. 871, 888 (1990). But claims based on personal knowledge or other evidence are sufficient. In evaluating the evidence presented, this order may not weigh conflicting evidence or make credibility determinations regarding statements made in affidavits, declarations, or depositions. *See T.W. Electrical Service, Inc., v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). All factual controversies that arise due to the parties' submission of contrary evidentiary facts are resolved in favor of the *non-moving* party. *See Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). Finally, the Ninth Circuit has clarified that:

> The federal Constitution gives a right of jury trial in a contested issue in a law action. This right is positive and should not be whittled away by decision of contested issues by the judge at hearings in camera before trial. The summary judgment rule does not confer this power even in a nonjury case. *The remedy can be invoked only when complete absence of genuine fact issue appears on the face of the record.* . . . This Rule, on account of these limitations, was not intended to be used as a substitute for a regular trial of cases where there are disputed issues of fact upon which the outcome of the litigation depends. . . . *Even if the trial court believe[s] there [i]s no chance of recovery, [the judge] [i]s bound to try out the issue thus contested. This is true even though the court may . . . believe[] some one issue [i]s decisive.*

*Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir. 1955) (quotation marks omitted; emphasis added).

**1.  CALIFORNIA LABOR CODE SECTION 230(a) CLAIMS.**

Plaintiff asserts two claims based on California Labor Code Section 230(a) — discharge for performing jury duty as required by law and wrongful termination in violation of public policy.

**A.  Legal Elements to be Proved.**

*(1)  Discharge for Performing Jury Duty As Required by Law.*

Plaintiff alleges that defendant EDS violated the plain terms of California Labor Code Section 230(a), which states:

> An employer may not discharge or in any manner discriminate against an employee for taking time off to serve as required by law on an inquest jury or trial jury, if the employee, prior to taking the time off, gives reasonable notice to the employer that he or she is required to serve.

4

Under the plain terms of the statute, the elements of a claim of wrongful discharge for performing jury duty under Section 230(a) are: (1) the employer discharged, or otherwise discriminated against, the employee; (2) the adverse employment action described in (1) was substantially motivated by the employee's taking or having taken time off to serve on an inquest or trial jury, as required by law; and (3) the employee, prior to taking the time off, provided the employer reasonable notice that he or she was required to serve. *See Deschene v. Pinole Point Steel Co.*, 90 Cal. Rptr. 2d 15, 21 (Cal. Ct. App. 1999) (setting forth the similar elements of a claim under Sections 230(b)–(c)). Importantly:

> Labor Code section 230 does not purport to apply to time taken off when not serving on a jury. The court ha[s] no jurisdiction under Labor Code section 230 to require the employer . . . not to discriminate against the employee for taking time off[] when he *was not serving* on a trial jury.

*People v. Kwee*, 46 Cal. Rptr. 2d 230, 232 (Cal. Ct. App. 1995) (emphasis in original).

### *(2) Wrongful Termination in Violation Of Public Policy.*

Plaintiff also alleges that he was wrongfully terminated in violation of the public policy expressed in Section 230(a). Such a claim was recognized by the California Supreme Court in *Gantt v. Sentry Insurance*, 824 P.2d 680, 684, n.4 (Cal. 1992), *overruled on other grounds by Green v. Ralee Engineering Co.*, 960 P.2d 1046 (Cal. 1998). To prevail on this claim, plaintiff must prove that Section 230(a) was in fact violated — that is, plaintiff's discharge must have been substantially motivated by his taking of time off for jury service *and* he must have provided his employer with reasonable notice of the same prior to taking the time off. This is all that is required to prove such a claim — discharge due to an employee's participation in jury duty is, as a matter of law, a wrongful discharge in violation of public policy, as recognized by the California Supreme Court in *Gantt* and the cases cited therein. *See also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137–38 (9th Cir. 2003). A legitimate reason for the termination alleged by a defendant may operate as a *defense* to such a claim, but if plaintiff shows that such a legitimate reason is either *not supported* by the evidence or is *pretext* for discrimination then that is an issue for the *jury* to determine. It is not the judge's role on summary judgment to weigh conflicting evidence or to make credibility determinations.

5

### B. Defendant's Objections to Plaintiff's Deposition Testimony.

Defendant requests that this order *not* consider plaintiff's deposition testimony in evaluating whether summary judgment is proper.

*First*, defendant claims that plaintiff's deposition contains testimony that is "self-serving," "manufactured after-the-fact," and "contradictory" to plaintiff's prior sworn statements (Br. 18–19). Contrary to defendant's objection, this order finds that much of plaintiff's deposition testimony is supported by evidence. Moreover, defendant has failed to show actual *contradictions* between plaintiff's deposition testimony and his prior statements. The only contradiction alleged is that although the complaint to the Department of Labor stated that plaintiff was told that his termination was the result of concerns "during the week of my jury summons" (Cox. Dep. Exh. 48), plaintiff's subsequent deposition testimony alleged that plaintiff was fired due to *both* a concern during the week of his jury summons *and* due to his specific absence on June 21, 2006, during his jury duty service. But this is not a contradiction. It is possible that plaintiff simply omitted some information from the DOL complaint. Defendant has pointed to nothing in the DOL complaint that flatly contradicts statements made by plaintiff in his deposition. As stated, this order may not weigh the evidence or make credibility determinations on summary judgment — those matters are for the jury to decide at trial.

*Second*, although defendant asserts that the deposition testimony is fabricated, defendant has not successfully pointed to any testimony on the record that is so implausible as to appear fabricated.

*Third*, defendant frequently relies on plaintiff's deposition testimony in support of defendant's own motion — so it would be unfair to disregard the testimony favorable to plaintiff all the while considering the testimony unfavorable to plaintiff. In sum, defendant's objections to this order's consideration of plaintiff's deposition testimony are **OVERRULED**.

### C. Facts on the Record.

It is undisputed that plaintiff was discharged by defendant on July 11, 2006. The remaining elements are discussed in turn.

6

### *(1) It Is Disputed Whether Plaintiff Provided Defendant Reasonable Notice Prior To His Jury Service.*

EDS' policy on jury service required employees to notify their "leader" as soon as possible after receiving notice to report to jury duty, at which time the employee would be excused from work with pay (Cox Dep. Exh. 28 at 98). Plaintiff cites testimony from various EDS managers to show that employees at EDS had several different types of "leaders," and therefore the meaning of "leader" in the EDS jury-notice policy was ambiguous (*see*, *e.g.*, McKenzie Dep. 64–65 ("Leader" means "direct manager in the organizational hierarchy"); Farnsworth Dep. 104–05 ("Leader, it means [your] administrative leader, [your] day-to-day delivery leader, or project manager"); Barrett Dep. 91–92 ("Leader" means the "people care leader")).

As stated, in May 2006, plaintiff received a jury summons from the San Francisco Superior Court notifying plaintiff that he may have to appear for jury duty on the week of June 19, 2006. On June 14, plaintiff sent an email to all of his leaders notifying them that he "[m]ay have Jury Duty 6/19" (Cox Dep. Exh. 30). Plaintiff then learned that he did not have jury duty on June 19, but, on the evening of June 19, plaintiff found out that he would have jury duty on June 20 beginning at 1:00 p.m. (Cox Decl. ¶ 6; Cox Dep. 313).

On the morning of June 20, plaintiff sent an email to numerous individuals at EDS, including his leaders, stating that he would "[h]ave to report to jury duty today and will not be in the office" (Cox Dep. Exh. 31). Plaintiff also set his automatic email response to say, "I am out of the office for jury duty Tuesday, 6/20" (*id.* at Exh. 32). Plaintiff worked from home on the morning of June 20, even though his jury duty did not start until 1:00 p.m. (*id.* at 205). Ordinarily, plaintiff was allowed to work from home so long as he was still "accessible" while doing so — *i.e.*, so long as he communicated that he would be working from home and called in to the office to attend required meetings (Farnsworth Dep. 86). But it is disputed whether or not plaintiff emailed anyone at EDS to inform them that he would be working at home that morning. Plaintiff stated under oath during his deposition that he *did* send such an email to numerous people at EDS (Cox Dep. 203–07). Defendant counters that plaintiff *did not* send such an email,

7

1  but only sent a general email stating that he would be out of the office all day June 20 for jury
2  duty and not specifying that his jury duty did not start until 1:00 p.m. (Barrett Dep. 103–04; Cox
3  Dep. Exh. 31–32).

4   It is also disputed whether plaintiff called in to the office on the morning of June 20, prior to his jury duty, to attend a mandatory invoice meeting. One EDS manager stated that plaintiff *did not* call in to the June 20 meeting (*see* Farnsworth Reply Decl. ¶ 3). Plaintiff testified under oath that he believes that he *did* call in to this meeting (Cox Dep. 313–14). Defendant focuses on one sentence of plaintiff's deposition testimony to argue that it is undisputed that plaintiff did not attend this meeting: "If they [other persons present at the meeting] said I did not [attend the June 20 meeting], I wouldn't dispute that" (*id.* at 314). But defendant inappropriately interprets this sentence outside of its full context, which is as follows (*id.* at 313–14) (emphasis added):

> Q: Did you participate in that [9:00 a.m.] meeting [on June 20, 2006]?
>
> A: I believe I had, yes. I'm not certain — on Tuesday, you said, right?
>
> Q: Tuesday.
>
> A: Yeah, I believe so. On Tuesday.
>
> Q: If the other persons present for that meeting said that you did not participate by telephone or otherwise, would you dispute it?
>
> \*    \*    \*
>
> [A]: Right. If on the 20th they said I did not, I wouldn't dispute that. I guess I had not, *but I believe I did*. I believe an e-mail I sent Tuesday morning was, I'm working from home on the invoicing stuff to — to other team members and that I would have attended the Tuesday morning meeting, I believe, but I could be wrong.

Read in this context, this order finds that the meaning of "[i]f on the 20th they said I did not, I wouldn't dispute that" is ambiguous. The surrounding language shows that plaintiff *believes* that he attended the meeting — his full testimony demonstrates that he was unsure but *believed that he attended the meeting*. As stated, this order may not make credibility determinations or weigh the evidence. It is plainly *disputed* whether plaintiff called in to attend the June 20 morning meeting.

8

Plaintiff attended jury duty at 1:00 p.m. on June 20 (Cox Dep. 315), where he found out that he had jury duty again on June 21 (Cox Decl. ¶ 9). Plaintiff then contacted some, but not all, of his leaders at EDS to inform them of the same (Cox Dep. 209–11; Barrett Dep. 87–88; Farnsworth Dep. Exh. 215). Plaintiff attended jury duty on June 21 (Cox Dep. 34). Plaintiff's jury service then ended (*ibid.*).

Section 230(a) does not define "reasonable notice," but simply states that the employee must "give[] reasonable notice to the employer that he or she is required to serve," and must do so "prior to taking the time off." Defendant contends that the notice provided by plaintiff was "short" (*i.e.*, not provided within sufficient time) and did not properly or accurately notify all required managers of the days and times that plaintiff was required to be absent. Nevertheless, given the disputed facts on the record, this order finds that a reasonable jury could conceivably conclude that plaintiff provided defendant "reasonable" notice of his pending jury service, as required in Section 230(a). On the other hand, this order finds that a reasonable jury could conceivably conclude that the notice plaintiff provided was *not* "reasonable," as required by the statute. As a result, a jury will have to decide.

### *(2)   It Is Disputed Whether Jury Service Was a Substantial Motivating Factor In Plaintiff's Termination.*

Plaintiff claims that he was terminated because of his absence for jury duty and because the local manager claimed to not know where plaintiff was during that time. Defendant counters that, in fact, plaintiff was terminated due to his numerous attendance and performance failures while working for EDS.

#### *(a)   Defendant claims plaintiff was terminated for poor job performance overall.*

Defendant cites the deposition testimony of one of plaintiff's supervisors stating that the termination decision stemmed from plaintiff's failure to communicate his whereabouts, lack of reliability, and poor job performance overall (Barrett Dep. 128–29, 133–34). As an example of plaintiff's poor job performance, defendant cites plaintiff's own testimony that plaintiff missed invoice meetings and deadlines, failed to respond to messages, and was often unavailable during

9

1  business hours (*id.* at 103–07). Defendant highlights various missed deadlines and invoice
2  meetings in May and June documented on a spreadsheet kept by plaintiff's supervisor from
3  September 2005 to June 2006 to track plaintiff's performance errors (*id.* at Exh. 10).
4  Defendant also points to plaintiff's unexcused absences surrounding his absences for jury duty.
5  For example, on June 22 plaintiff missed a 9:00 a.m. invoice meeting because he was in another
6  employee's office discussing a project (*id.* at 222–23, 226–27). And again on June 23 plaintiff
7  missed a 9:00 a.m. invoice meeting because he overslept (*id.* at 231–33, Exh. 36).[1] Defendant
8  claims plaintiff's deposition testimony shows that, from May 2006 onward, plaintiff had
9  essentially given up on his job, knew he was on "thin ice," and felt that his own termination was
10 imminent (Cox Dep. 34, 167–68). Defendant also points to attendance and responsiveness issues
11 that occurred after June 23 (*id.* at 241–46). Defendant finally emphasizes that Section 230(a)
12 does *not* excuse absences while the employee is *not* at jury duty.

13    Plaintiff acknowledges that he had some job performance issues. But despite "bumps" in
14 his career at EDS, including some verbal criticisms from supervisors (*see id.* at 103–07), plaintiff
15 presents his actual performance evaluations as evidence that he consistently received overall
16 annual performance ratings of "meets expectations" or higher throughout his employment at EDS
17 (Cox Decl. Exh. 1–6). It is undisputed that in March 2006 plaintiff was placed on a performance
18 improvement plan and received verbal warnings from supervisors during that time that he could
19 be terminated without warning if his performance did not improve (*see* Cox Dep. 153, 269,
20 Exh. 17). But plaintiff successfully completed the performance improvement plan after 45 days
21 on May 2, 2006 (Barrett Dep. 57). Following completion of the performance improvement plan,
22 plaintiff's managerial duties were immediately taken away (*see* Cox Dep. 60–61), but plaintiff
23 submits managerial emails and deposition testimony stating that the purpose of the change in job
24 functions was to help plaintiff succeed, rather than to facilitate his termination (Farnsworth Dep.

---

[1] Plaintiff's objection to Exhibit 36 (*see* Dkt. No. 52) is overruled. As pointed out by defendant, plaintiff's own deposition testimony is sufficient to show personal knowledge of the matters contained in Exhibit 36 (*see* Cox Dep. 231–33). Moreover, the declaration of Michelle Farnsworth provides additional support for Exhibit 36 (*see* Farnsworth Reply Decl. ¶ 2). This order need not address plaintiff's objection to Exhibit 21 (*see* Dkt. No. 52) as this order does not rely on Exhibit 21 in forming any conclusions herein.

43–45; Barrett Dep. 67). Defendant emphasizes that even following the performance improvement plan plaintiff understood his employment was at-will (*see* Cox Dep. 158–59).

### *(b)   Plaintiff claims he was terminated due to his absence for jury service.*

Despite problems in job performance, plaintiff points to statements made at the meeting at which he was terminated on July 11, 2006, to argue that the catalyst of the termination was plaintiff's absence for jury duty. For example, plaintiff testified under oath that during this meeting, a supervisor stated that plaintiff was being terminated at least in part due to problems that occurred during "the week of June 21," specifically during June 20 and 21 (*id.* at 253–55).[2] Although notes taken by several EDS supervisors at this meeting are not entirely consistent with plaintiff's statements, it is disputed whether these notes accurately reflect what was said at the meeting (*ibid.*). Defendant points out that, when pressed, plaintiff admitted that he could be wrong about the supervisor's mention of his June 20 absence in this meeting, but plaintiff maintained that his memory was that "she said both dates" — *i.e.*, June 20 and 21 (*id.* at 300). As a result, it remains disputed whether the supervisor referred to the dates of plaintiff's jury duty service in the termination meeting. As stated, this order may not make credibility determinations or weigh the evidence. Finally, defendant stresses that plaintiff admitted that his absence at the June 22 invoice meeting was also cited as a reason for his termination (*id.* at 256) and that plaintiff was uncertain whether his absence at the June 23 invoice meeting was cited as a reason for his termination (*id.* at 256–57). But these statements do not change the fact that it is *disputed* whether the dates of plaintiff's absence for jury duty were cited as reasons for his termination.

Plaintiff also points out that the spreadsheet made by a supervisor to document plaintiff's performance failures likewise documented problems occurring on June 21, 2006 — the second day that plaintiff was absent for jury duty (Farnsworth Dep. Exh. 10).

Finally, plaintiff points to managerial emails to show that the decision to terminate plaintiff was made on June 22, immediately following his jury service absence, even though

---

[2] Defendant emphasizes that plaintiff was unsure whether the supervisor stated "the week of *June 21*" or "the week of *June 20*" (*see* Cox Dep. 300–01). This order does not find this discrepancy to be material. June 21, 2006, was a Wednesday. "The week of June 20" and "the week of June 21" clearly refer to the same week.

11

plaintiff was not actually fired until July 11 due to alleged bureaucratic loopholes (Barrett Dep. 133–34; Farnsworth Dep. Exh. 37).  *First*, one of his managers, who was not informed by plaintiff on the morning of June 21 that plaintiff would be absent that day for jury duty, stated in an email message that she was "angry" at plaintiff because he failed to specifically inform her of the same (Farnsworth Dep. 96–97, 107, Exh. 215).  *Second*, plaintiff points to an email sent on June 22 allegedly deciding that plaintiff should be fired (*see id.* at Exh. 37).  In this email, the supervisor pointed to a series of failures to justify plaintiff's termination; but it is disputed whether plaintiff was rightfully to blame for the issues cited in the June 22 email, as plaintiff presents evidence that he either:  (1) was not the individual responsible for the problem (*see* Barrett Dep. 63, 75–76; Cox Dep. 234;  Royer Decl. Exh. 5); (2) had personally remedied the problem (*see* Cox Dep. 214–16; Cox Decl. ¶ 12); or (3) was informed that the problem was being remedied (*see* Cox Dep. 214–16).

Defendant emphasizes deposition testimony stating that other EDS employees, including plaintiff, had previously attended jury duty while working for EDS yet had not been terminated (*see* Cox Dep. 25–26, 36).  Defendant argues that this shows plaintiff's jury service could not have been the reason for his termination.

### (c) *These disputed facts show a genuine issue of material fact.*

Under these disputed facts, a reasonable jury could conclude that a substantial motivating factor underlying plaintiff's termination was plaintiff's absence for jury duty.  On the other hand, under these facts, a reasonable jury could conclude that plaintiff's absence for jury duty service was *not* a substantial motivating factor underlying plaintiff's termination.  Therefore, summary judgment as to these claims must be denied due to the existence of a genuine issue of material fact.  In sum, summary judgment as to claims 1 (wrongful termination in violation fo public policy) and 2 (discharge for performing jury duty) is hereby **DENIED**.

### 2. CONVERSION OF PERSONAL PROPERTY.

Plaintiff claims that defendant converted $200 worth of plaintiff's personal property left in his former office following his termination.

### A. Legal Elements To Be Proved.

The Ninth Circuit has stated the elements of a conversion claim under California law as follows:

> A conversion occurs where the defendant wrongfully exercises dominion over the property of another. *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 35 Cal. Rptr. 3d 684, 691 (Ct. App. 2005) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 61 Cal.Rptr.2d 707, 709 (Ct. App. 1997)). To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages. *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 245 Cal. Rptr. 548, 550 (Cal. Ct. App. 1988) (citing *Baldwin*, 145 Cal.Rptr. at 416). *A plaintiff in a conversion action must also prove that it did not consent to the defendant's exercise of dominion.*

*Band of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (emphasis added).

### B. Facts On The Record.

It is undisputed that, at the time of his termination, plaintiff had personal items in his office (Cox Dep. 47). Following plaintiff's termination, plaintiff was escorted to his office to retrieve his coat, keys, and backpack (*ibid.*; Cox Decl. ¶ 22). Plaintiff requested to return at a later date to collect the remainder of his personal items from his office, but EDS refused to allow plaintiff to do so (Cox Decl. ¶¶ 22–23). Instead, plaintiff was told that the items would be shipped to him (*id.* at ¶ 23). But, in fact, plaintiff *was* allowed to return to the office several days after his termination to collect additional personal items — namely, a plant and a large print (Cox Dep. 47–48). Additional items still remained at EDS. Plaintiff again returned to the EDS facilities approximately two weeks later for a meeting with CSAA managers and actually ran into several EDS managers; but he did not attempt to collect his remaining personal belongings at that time (*id.* at 70–72).

It is unclear why plaintiff did not collect all of his remaining items either immediately following his termination, when he returned to the office two days later, or when he returned to the office two weeks later. At all events, it is undisputed that he did not. Defendant presents evidence that certain administrative individuals at EDS were instructed to ship the remaining

13

items (*see*, *e.g.*, Barrett Dep. 150–51), but defendant concedes that the items were never actually shipped as plaintiff was originally told they would be (Br. 14). Plaintiff claims that he never received the missing items — namely, a space heater, six picture frames, a five-year anniversary employee gift, and other personal items that plaintiff cannot remember (Cox Decl. ¶ 24; Cox Dep. 43–44). Plaintiff estimates the missing items to be worth approximately $200 (Cox Decl. ¶ 24).

Plaintiff also concedes that he did not follow up with EDS as to the remaining items (Cox Dep. 49–50). Furthermore, plaintiff's own deposition testimony admits that in May 2007, ten months after plaintiff was terminated, EDS emailed plaintiff requesting that he come retrieve his belongings — but plaintiff *declined* to do so because he did not think it was "appropriate" for him to show up at his former office and told EDS "not to worry about it" (*see id.* at 326–27, Exh. 50). Instead, plaintiff emailed the person who had moved into his old office at EDS (*id.* at 328):

> I said something to the effect that I didn't expect him to, like, you know, sort through my stuff and clean out stuff for me, but if he stumbled across something that he thought might be valuable, I'd appreciate him putting it aside and letting me know that it was there, to come get it. . . . I believe this is the last interaction relating to my belongings that I had [with EDS].

Plaintiff argues that this email did not give EDS permission to discard his belongings (Opp. 8). Plaintiff neither heard back from nor followed up with the new employee whom he had emailed (Cox Dep. 328). Nevertheless, plaintiff filed a complaint in state court alleging a conversion claim in July 2008.

These events undeniably show that plaintiff *consented* to EDS' possession and disposal of his property remaining at EDS. It is immaterial that, immediately following his termination, plaintiff was told he could not come back to retrieve his belongings. In fact, plaintiff had *several* opportunities to collect his items from EDS — *first*, immediately following his termination, *again* several days later, and *again* two weeks later. *He also was invited back to EDS ten months later to retrieve his belongings, but declined to do so.* He also sent an email to an employee of EDS stating that, if the employee found belongings were not "valuable," the employee could *discard* plaintiff's belongings. Finally, plaintiff did not follow up with EDS to request his remaining belongings.

14

1 Even if this order were to give plaintiff the benefit of the doubt and find that defendant *did* exercise dominion and control over plaintiff's property for the period of ten months from the time of plaintiff's termination until the May 2007 email inviting plaintiff to recover his property, plaintiff never claimed any damages stemming from this ten month period of loss of dominion and control. Rather, the only damage plaintiff has alleged is that the property was worth approximately $200. No reasonable jury could conclude that plaintiff was harmed by his loss of control of a space heater, six picture frames, a five year anniversary employee gift, and other personal items that plaintiff cannot remember, for a period of ten months several years ago. Following the May 2007 email, defendant no longer withheld the approximately $200 worth of property, and plaintiff's alleged harm ceased to exist.

In sum, this order concludes that, under the facts on the record, no reasonable jury could conclude: (1) that plaintiff did not consent to defendant's dominion over plaintiff's property as of at least May 2007, if not earlier; or (2) that plaintiff was injured by defendant's possession of his approximately $200 worth of property for ten months in 2006 and 2007. Summary judgment is **GRANTED** as to this claim.[3]

### 3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND PREVENTION OF SUBSEQUENT EMPLOYMENT BY MISREPRESENTATION.

Defendant seeks summary judgment as to claim 5 (intentional interference with prospective economic advantage) and claim 6 (prevention of subsequent employment by misrepresentation under California Labor Code Section 1050). These claims stemmed from plaintiff's allegations in the first amended complaint that, following plaintiff's application for employment with CSAA on July 6, 2006, EDS contacted CSAA and communicated misrepresentations regarding plaintiff's termination thereby convincing CSAA not to hire plaintiff. Plaintiff received a rejection letter from CSAA in September 2006 informing him that he would not be hired due to his termination from EDS.

---

[3] Defendant's suggestion that plaintiff failed to mitigate his damages (Reply Br. 15) need not be addressed given this order's ultimate conclusion as to the conversion claim.

15

### A. Legal Elements to be Proved.

The elements required to prove intentional interference with plaintiff's economic advantage are as follows:

> *First*, a plaintiff . . . must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff. This tort therefore protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise. . . . *Second*, a defendant must have knowledge of the plaintiff's economic relationship. . . . *Third*, the defendant must have engaged in intentionally wrongful acts designed to disrupt the plaintiff's relationship.

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 957 (Cal. 2003) (quotation marks omitted; emphasis added).

Claim 6 for prevention of subsequent employment by misrepresentation relies on Labor Code Section 1050, which states: "Any person, or agent, or officer thereof, who, after having discharged an employee from the service of such person . . . by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor."

### B. Facts on the Record.

Defendant emphasizes that plaintiff has failed to prove defendant engaged in wrongful acts designed to disrupt the plaintiff's prospects of employment, as required under both claims. Defendant cites deposition testimony from both the hiring manager at CSAA and plaintiff stating that, in fact, *plaintiff* was the only person to inform CSAA of the details of plaintiff's termination from EDS (Bouey Dep. 16–17, 47–48). Indeed, plaintiff admitted that he did not know if anyone at EDS ever informed CSAA that plaintiff had been terminated (*see* Cox Dep. 280). Moreover, the testimony of various EDS managers states that EDS adhered to its policy of simply informing the customer (CSAA), when asked, that plaintiff was no longer employed with EDS (Farnsworth Dep. 115–16; Smith Dep. 45–47). Plaintiff has not suggested that this policy was illegal. Finally, the testimony of the hiring manager at CSAA suggests that CSAA only chose not to hire plaintiff because *plaintiff* failed to show up to a scheduled interview and to subsequently

16

follow up with CSAA, rather than because of anything that EDS said or did (Bouey Dep. 16–17, 47–48).

Plaintiff does not oppose summary judgment as to these claims. As a result, plaintiff has failed to proffer contrary evidence suggesting that EDS engaged in wrongful acts designed to disrupt plaintiff's prospects of employment with CSAA. Therefore, plaintiff has failed to demonstrate a genuine issue of material fact as to claims 5 and 6. Summary judgment as to claim 5 (intentional interference with prospective economic advantage) and claim 6 (prevention of subsequent employment by misrepresentation) is hereby **GRANTED**.[4]

### 4. UNFAIR BUSINESS ACTS UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200.

Plaintiff claims that defendant violated California Business and Professions Code Section 17200 due to defendant's violations of Labor Code Sections 230(a) and 1050. Indeed, Section 17200 operates by "borrowing" violations from other statutes by making them independently actionable as unfair competitive practices. *See*, *e.g.*, *Theme Promotions, Inc., v. News America Marketing FSI*, 546 F.3d 991, 1008 (9th Cir. 2008). As stated, summary judgment has been granted as to plaintiff's Section 1050 claim. Therefore, the only remaining bases for this claim are the Section 230(a) claims.

Defendant first states that plaintiff has failed to show a genuine issue of material fact regarding the Labor Code Section 230(a) claims — therefore, plaintiff cannot prevail on his Section 17200 claim. But, as stated, a genuine issue of material fact remains as to the Section 230(a) claims, so defendant's first argument is no defense.

Next, defendant rightly claims that, even if plaintiff can succeed on the Section 17200 claim, the only allowable recovery is equitable in nature; therefore, defendant argues, plaintiff cannot recover damages. *See Bank of the West v. Superior Court*, 833 P.2d 545, 557 (Cal. 1992); *Cort v. St. Paul Fire & Marine insurance Cos., Inc.*, 311 F.3d 979, 987 (9th Cir. 2002) ("Section 17200, however, entitles an individual litigant only to injunctive and restitutionary

---

[4] Because summary judgment is granted on this ground, this order need not address defendant's arguments regarding a "common interest" privilege or the statute of limitations.

17

relief; it does not provide for damages"). The first amended complaint seeks "restitution for loss of pay and benefits" (First Amd. Compl. 7).

Defendant is right — loss of pay and benefits are not properly classified as "restitution" under Section 17200, *et seq.* Indeed, the Ninth Circuit has interpreted the restitutionary relief allowed under Section 17200, *et seq.*, as follows:

> Section 17203, in part, allows courts to make orders or judgments "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." The California Supreme Court has determined that this phrase allows awards of restitution, *but not awards of non-restitutionary disgorgement*. [*Korea Supply Co.*, 63 P.3d] at 949. The California Supreme Court has explained that restitution orders are "orders compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Kraus v. Trinity Mgmt. Servs., Inc.*, 999 P.2d 718, 725, 23 Cal. 4th 116, 96 Cal. Rptr. 2d 485 (Cal. 2000).

*Theme Promotions*, 546 F.3d at 1008–09 (emphasis added). The remedy that plaintiff seeks in the present case is "non-restitutionary disgorgement" — as explained by the California Supreme Court:

> In an attempt to fit its claim within the statutory authorization for relief, and as an implicit acknowledgement [*sic*] that nonrestitutionary disgorgement is not an available remedy in an individual action under the UCL, plaintiff describes its requested remedy as "restitution." This term does not accurately describe the relief sought by plaintiff. As defined in *Kraus*, an order for restitution is one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." (*Kraus*, supra, 23 Cal. 4th at ¶. 126–127.) The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest. The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants. First, it is clear that plaintiff is not seeking the return of money or property that was once in its possession. . . . Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff.

*Korea Supply Co.*, 63 P.3d at 1148–49. *Korea Supply* further stated that although unpaid wages that were *earned* and therefore *owed* were proper restitutionary relief under Section 17203, unpaid wages and other benefits that were *never earned* and therefore *never owed* did *not*

18

properly fall under Section 17203. *Id.* at 1149–50. *The latter is what plaintiff seeks in his Section 17200 claim.*

In sum, the relief that plaintiff seeks is "non-restitutionary disgorgement," and is not recoverable under Section 17200. As a result, plaintiff has failed to allege a genuine issue of material fact as to this claim, and summary judgment as to claim 7 for unfair business practices is **GRANTED**.

## CONCLUSION

For the reasons stated above, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** as to the following claims:

- Claim 4: Conversion of personal property;
- Claim 5: Intentional interference with prospective economic advantage;
- Claim 6: Prevention subsequent employment by misrepresentation under California Labor Code Section 1050; and
- Claim 7: Unfair business practices under California Business and Professions Code Section 17200.

The motion is **DENIED** as to the following claims:

- Claim 1: Wrongful discharge in violation of public policy under California Labor Code Section 230(a); and
- Claim 2: Discharge for performing jury duty as required by law under California Labor Code Section 230(a).

Finally, a denial of summary judgment does not mean that the case will necessarily go to the jury. It usually means that it will. But sometimes a plaintiff's case at trial is weaker than the opposition to a summary judgment motion. This could very well warrant a Rule 50 order at the

end of the plaintiff's case. Or, some factual blur in the defense summary judgment record may be clarified in sharp focus at trial, necessitating a Rule 50 order.

**IT IS SO ORDERED.**

Dated: November 16, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE